```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA,                     :
                                              :    MEMORANDUM
v.                                            :    OPINION AND ORDER
                                              :
ADRIAN BRADSHAW,                              :    18 CR 77 (VB)
                           Defendant.         :
--------------------------------------------------------------x
```

Briccetti, J.:

Now pending is defendant Adrian Bradshaw's motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his term of imprisonment to time served. (Doc. #50).

For the following reasons, the motion is DENIED.

The current COVID-19 pandemic is an unprecedented worldwide catastrophe. But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious and dangerous offenses, like Bradshaw, whose medical condition and risk of serious complications if he were to contract the virus cannot, by any reasonable definition, be deemed "extraordinary and compelling." See 18 U.S.C. § 3582(c)(1)(A)(i).

First, Bradshaw's offense was exceptionally serious. On September 27, 2018, he pleaded guilty to committing Hobbs Act robbery. Specifically, Bradshaw admitted that in the early morning of January 13, 2018, he arrived at his girlfriend's home in Mount Vernon and saw her having sex with another man (the "victim"). Bradshaw climbed through a window and struck the victim with a bottle, causing profuse bleeding, took the victim's car keys under threat of further harm, and then stole his car and marijuana, which was inside the vehicle. Bradshaw has two prior felony convictions.

On January 22, 2019, after careful consideration of all the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and the history and characteristics of the

1

defendant, the Court sentenced Bradshaw to fifty-four months' imprisonment, to be followed by three years of supervised release. The Court did so despite an applicable Sentencing Guidelines range of 84 to 105 months' imprisonment[1] and the Probation Department's recommendation of a sixty-month sentence. The Court determined that the sentence imposed was sufficient but not greater than necessary to reflect the serious nature of Bradshaw's crimes, promote respect for the law, provide just punishment, and afford adequate deterrence.

To date, Bradshaw has served roughly thirty months of his sentence, or about fifty-six percent of the sentence imposed.

Second, Bradshaw has not demonstrated "extraordinary and compelling reasons" to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed prison sentence—taking into account critical data such as his medical history. Bradshaw is twenty-nine years old. He is not elderly or infirm. He has asthma, which he characterizes as a "chronic condition" (Doc. #50 at ECF 3),[2] and which he claims "makes him a sitting duck to be used as target practice by COVID-19." (Id. at ECF 5–6).

But Bradshaw's medical records demonstrate his asthma is "mild and stable." (Ex. A. at 75).[3] Indeed, his medical records indicate Bureau of Prisons ("BOP") medical staff have

---

[1] In a plea agreement, Bradshaw and the government stipulated to a Guidelines range of 46 to 57 months' imprisonment. However, the Probation Department calculated a Guidelines range of 84 to 105 months' imprisonment. Unlike the parties' calculation, the Probation Department added four levels to Bradshaw's total offense level for his use of a dangerous weapon, and two additional levels because the victim had suffered bodily injury. At sentencing, the Court adopted the Probation Department's Guidelines calculation.

[2] Citations to "ECF __" refer to page numbers automatically assigned by the Court's Electronic Case Filing system.

[3] Citations to "Ex. A at __" refer to Bradshaw's BOP medical file, which the government has provided under seal to the Court.

consistently monitored his condition and treated his asthma, including with an albuterol inhaler, and have consistently instructed Bradshaw not to use the albuterol inhaler daily, but rather only "as needed to prevent/relieve asthma attack." (Id. at 6). During an examination in February 2019, Bradshaw advised BOP medical staff he "does well," "only needs his inhaler for exercise," and that he doesn't wheeze or cough at night. (Id. at 4). In July 2019, Bradshaw informed medical staff that he "uses his [] inhaler once every 2-3 weeks" and "rarely wakes from sleep due to his symptoms." (Id. at 74). And in December 2019, Bradshaw informed medical staff he uses his inhaler "with exercise" and "prior to sports," and occasionally "if too humid, cold, dust, etc." (Id. at 71). In short, there is no credible indication in Bradshaw's medical file that his condition significantly increases his risk of contracting COVID-19 or developing serious complications if he does. Further, Bradshaw "has not shown he has a terminal illness or a serious physical or medical condition that has substantially diminished his ability to provide self-care within the environment of a correctional facility." See United States v. Gotti, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020). Instead, all Bradshaw "has done is to note that he has asthma, he is in prison, and there is a COVID-19 outbreak nationwide. That is not enough." See United States v. Rodriguez, 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020).

Of course Bradshaw is at risk for contracting the virus at FCI Fairton, where he is currently housed. However, the Court is persuaded by the government's submission that FCI Fairton has taken substantial measures to respond to the COVID-19 threat at its facility, which have in fact mitigated its spread, and has the means to competently care for its inmate population. For example, all inmates are provided surgical masks on a weekly basis, are encouraged to wear them when social distancing is not possible, and have been instructed on sanitation and social distancing; FCI Fairton staff conducts enhanced screening for all inmates

with ongoing work details at the facility, both before and after each assigned work detail; a medical questionnaire and temperature check is required for staff and necessary contractors entering the facility; new inmates coming into FCI Fairton are screened for fever, symptoms, and exposure risk factors, and are quarantined for fourteen days before they are released to assigned housing units; and inmate movement within the facility has been limited on a modified schedule designed to maximize social distancing.  (See Doc. #52 at 11–13 and n.10 (citing Declaration of Jason Raguckas, Case Manager Coordinator at FCI Fairton ¶¶ 22–34, United States v. Burman, 16-cr-190 (S.D.N.Y. May 28, 2020), ECF No. 83)).  Moreover, and importantly, FCI Fairton's handling of Bradshaw's medical care since the commencement of his term of imprisonment is demonstrative of BOP's ability to provide adequate care to Bradshaw, even if he were to contract COVID-19.

Bradshaw also argues that, if released, he would take care of his mother, whose "lifespan relies on the success of [surgical] procedures and medical treatments."  (Doc. #50 at ECF 6).  Although unfortunate, the condition of defendant's mother's health does not constitute an "extraordinary and compelling reason" to reduce Bradshaw's sentence.  See U.S.S.G. § 1B1.13 cmt. 1(C) (providing policy guidance on "family circumstances" which may constitute extraordinary and compelling circumstances warranting the Court's consideration to reduce an inmate's sentence:  (i) the death or incapacitation of the caregiver of defendant's minor child or children; and (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only caregiver for such person).

Finally, as required by Section 3582(c)(1)(A), the Court has considered "the factors set forth in section 3553(a) to the extent that they are applicable."  The exceptionally serious nature of the offenses, as well as Bradshaw's criminal history, warranted a fifty-four month prison

sentence at the time sentence was imposed; those same factors counsel strongly against cutting that sentence by nearly fifty percent, especially in light of the downward variance already imposed at sentencing given the Guidelines range of 84 to 105 months' imprisonment. Moreover, the sentence was designed to promote respect for the law and provide just punishment for the offense. To dramatically reduce the sentence in light of the current public health crisis would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law. And shortening Bradshaw's sentence would also undermine another critical sentencing objective in this case: the need for the sentence imposed to afford adequate deterrence to criminal conduct. These sentencing factors not only supported the sentence at the time it was imposed, they also weigh strongly against Bradshaw's early release.

Accordingly, defendant Adrian Bradshaw's motion for a reduction of his term of imprisonment is DENIED.

Chambers will mail a copy of this Memorandum Opinion and Order to defendant at the following address:

> Adrian Bradshaw
> Reg. No. 79929-054
> FCI Fairton
> Federal Correctional Institution
> P.O. Box 420
> Fairton, NJ  08320

Dated: July 13, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge